742 P.2d 8

**TITLE GUARANTY AND INSURANCE COMPANY, Plaintiff and Counterdefendant,**

v.

**Opal A. CAMPBELL, Sam T. Campbell, Dixie Dee Campbell Hinton, Threet, Threet, Glass, King & Hooe, and Threet and King, Defendants, Counterclaimants, and Cross-Claimants-Appellees,**

**Sutin, Thayer & Browne, Defendant, Counterclaimant and Cross-Claimant,**

**H.E. Bud Robison, d/b/a Robison Realty, Defendant, and**

**Beverly KATZ, Defendant, Counterclaimant, Cross-Claimant and Third-Party Plaintiff-Appellant,**

v.

**David L. HORPENDAHL, Gwynne Horpendahl, Leroy C. Horpendahl and Alice Horpendahl, Third-Party Defendants.**

**No. 8599.**

Court of Appeals of New Mexico.

Aug. 4, 1987.

David W. King, Threet and King, Albuquerque, for defendants, counter-claimants, and cross-claimants-appellees.

Michael E. Vigil, Marchiondo & Berry, P.A., Albuquerque, for defendant, counterclaimant, cross-claimant and third-party plaintiff-appellant.

## OPINION

MINZNER, Judge.

Plaintiff title company sued to quiet title to a Los Alamos duplex and asked the court for an order directing distribution of a fund held in escrow after the duplex was sold. The complaint alleged that all of the named defendants "may claim a lien or interest in the subject real estate by reason of their claims in and connection with Bernalillo County Consolidated Cause No. CV–77–0142 and CV–77–02209 and may claim an interest in the funds held in escrow by plaintiff." The litigation to which the complaint refers has been before this court on three other occasions. *See Robison v. Katz*, 94 N.M. 314, 610 P.2d 201 (Ct.App. 1980) (*Robison I*); *Robison v. Campbell*, 99 N.M. 579, 661 P.2d 479 (Ct.App.1983) (*Robison II*); *Robison v. Campbell*, 101 N.M. 393, 683 P.2d 510 (Ct.App.1984) (*Robison III*).

In the present case, the trial court denied a motion by Beverly Katz (appellant) to dismiss for lack of jurisdiction and granted summary judgment in favor of Dixie Dee Campbell Hinton and the law firm of Threet and King (appellees).[1] On appeal, appellant first contends that the trial court erred in denying her motion to dismiss, because the matter arises out of a levy under a Bernalillo County writ of execution. *See* NMSA 1978, §§ 39–4–1 and –3. She also contends that if the trial court had jurisdiction, it erred in granting summary judgment, because the escrow fund secures

---

1. Although the caption used by the parties at trial and on appeal includes Opal A. Campbell and Sam T. Campbell among the group of defendants-appellees, the arguments on appeal concern claims by or on behalf of Ms. Hinton and Threet and King. For this reason, we have designated them in the opinion as appellees.

a money judgment in her favor. In our view, the record does not support either argument, and we affirm.

**BACKGROUND.**

In 1976, appellant owned real property located in Los Alamos County on which a duplex was located. In July of that year, Katz exchanged the duplex for a trailer park pursuant to a real estate contract with Opal Campbell, her son Sam Campbell, and her daughter Dixie Hinton. Appellant rented an apartment in the duplex from the Campbells, and they rented a trailer space from her. Controversy over the transaction developed by December 1976, and two related lawsuits were filed and then consolidated in 1977.

In Bernalillo County Cause No. CV–77–1421, Bud Robison, the realtor who represented the Campbells and Ms. Hinton in the transaction, sought declaratory judgment as to his liability for misrepresentation. Appellant counterclaimed against Robison and cross-claimed against the Campbells on the basis of fraud, misrepresentation, and breach of fiduciary duty, seeking rescission and consequential and punitive damages. Campbells cross-claimed against Robison for damages for abuse of privacy. In Bernalillo County Cause No. CV–77–2209, Campbells sued appellant for rent. After the two cases were consolidated, the trial court found that both Robison and Campbell had negligently misrepresented the park's condition. However, the court refused to grant rescission; he concluded that appellant's inability to return the trailer park barred that remedy.[2] The trial judge awarded appellant damages, other than consequential and punitive damages, and awarded Campbells various setoffs, thereby reducing appellant's total award to $26,789 plus costs. In addition, the trial court granted appellant's attorneys, Sutin, Thayer & Browne, a charging lien and awarded the Campbells damages against Robison for abuse of privacy. Judgment was entered March 13, 1978. Appellant, Robison, and the Sutin law firm appealed.

Appellant had filed a notice of lis pendens in 1977. She filed a transcript of judgment on April 5, 1978, and on August 3, she filed pro se two additional notices of lis pendens, which referred to the prior litigation and the unpaid judgment.

While *Robison I* was pending, the trial court entered an order prohibiting Campbells from selling the Los Alamos duplex pending disposition of the appeal. However, they secured a writ of prohibition from the supreme court, and the duplex was sold in May 1979. At that time, the title company set aside $35,586.28 of the sale proceeds after an exchange of letters with Threet, Threet, Glass, King and Hooe, who represented the Campbells. In that correspondence, the Campbells agreed that sum should be held in escrow, and the title company agreed that the money would be repaid to Ms. Campbell if the 1978 judgment were reversed and the cause remanded for a new trial. The check evidencing the deposit bears the notation that it is "[m]oney held for Bud Robison Realty Mortgage * * * and Katz lien."

In July 1979, Threet, Threet, Glass, King and Hooe filed an attorney's lien, which related back to December 6, 1976, in the sum of $28,362.02 against any recovery due the Campbells. In November 1979, the Campbells moved for an order requiring a release of the funds held in escrow to the registry of the district court. The motion was denied.

In March 1980, the court of appeals issued its decision in *Robison I*. The court reversed, on the ground that under the special circumstances presented by the facts, rescission would be allowed. The court remanded for further proceedings, including an accounting. The court noted that although special and punitive damages could be awarded against Robison, double recovery was to be avoided. The court also held that the Campbells had no cause of action against Robison.

Trial on remand occurred in March 1981. The trial court dismissed as to Sam Camp-

---

**2.** Appellant had made all payments due with respect to the trailer park until August 1977, when she defaulted on an underlying real estate contract. The vendor terminated the contract due to this default, during the period after the two complaints were filed and prior to trial.

bell and Dixie Hinton and awarded appellant a money judgment based on the accounting, consequential damages against Opal Campbell and Robison, and punitive damages against Robison. Because the Los Alamos duplex had been disposed of prior to the date mandate issued, the trial court included its value at the time of sale, plus interest and rental value, in calculating the gross sum due appellant from the Campbells. The judgment included an attorney's charging lien in favor of Sutin, Thayer & Browne against their client's recovery. The second judgment was entered July 21, 1981. On July 20, the Campbells had assigned their interest in the fund held by the title company to Threet and King. The record indicates that at that time the Campbells owed Threet and King over $50,000. It is undisputed that Threet and King is the successor to Threet, Threet, Glass, King and Hooe.

Appellant again appealed; Sutin, Thayer & Browne, Opal Campbell, and Robison cross-appealed. *See generally Robison II.* On appeal, this court first determined that it was error to dismiss the claim against Sam Campbell. The court also held that the charging lien was valid because it attached to the second judgment; although appellant's personal liability for attorney's fees had been discharged in bankruptcy, the lien was not affected. This court affirmed the trial court's decision that a reasonable fee was $25,000. As to the gross sum due appellant on the basis of the accounting, there were errors requiring remand, but this court affirmed the trial court's decision to include the value of the duplex in the gross sum due appellant. This court also affirmed the trial court's calculation of the setoff due the Campbells. The court reversed the award for damages made jointly against Opal Campbell and Robison, affirmed the sum awarded appellant against Robison for consequential damages, but because that award was reduced significantly, reversed the award of

punitive damages and remanded for reconsideration.

On September 13, 1983, the trial court entered judgment on the mandate, again awarding appellant $10,000 in punitive damages. Robison appealed and the Campbells cross-appealed. On September 21, appellant obtained a writ of execution from the Bernalillo County district court addressed to the sheriff of Los Alamos County. According to the sheriff's return of service, he served a copy on the title company. Shortly after he served the copy, the present suit was filed in Los Alamos County. Apparently the present lawsuit, as well as execution on the 1983 judgment, was held in abeyance until after mandate had issued in *Robison III.*[3] In 1985, several motions were filed in Los Alamos district court. Plaintiff, Sutin, Thayer & Browne and appellees moved for summary judgment. The evidence before the trial court consisted of affidavits and copies of documents attached as exhibits. Appellant moved to dismiss for lack of jurisdiction. She also asked that the Los Alamos duplex be returned to her. While she acknowledged the validity of her former attorney's charging lien, she contended that it did not preclude her right to restitution of the land itself. After a hearing, at which the trial court heard arguments by counsel, the court denied the motions made by appellant, awarded plaintiff counsel fees, and granted appellees' motion for summary judgment.

Although there are four arguments on appeal, the first challenges the trial court's jurisdiction and the others address the priority of appellees' rights in the fund. For this reason, we discuss the appellate issues under two headings.

## WHETHER THE TRIAL COURT HAD JURISDICTION.

■ Appellant contends that under Section 39–4–1, the Bernalillo County district court had exclusive jurisdiction over the

---

**3.** The court of appeals decision was filed May 3, 1984. The sheriff's return of service is dated July 7, 1984. In November, the Bernalillo County district court ordered distribution to Sutin, Thayer & Browne in partial satisfaction of their charging lien. Pursuant to the court's order, Robison paid the sum of $14,743, from which $4,315.20 was deducted in favor of appellant for costs.

fund. Therefore, she concludes that the Los Alamos district court lacked jurisdiction.

Section 39-4-1 provides that:

The party in whose favor any judgment, order or decree in any court may be returned, shall have execution therefor in conformity to the order, judgment or decree. Said execution may be issued to the sheriff of any county of the state, and levy and sale made in any county wherein the judgment debtor may have property subject to execution.

The court where the judgment or decree was rendered shall have jurisdiction over all matters growing out of the levy or sale under any execution.

Under Section 39-4-3, the officer in whose hands the writ is placed for execution:

* * * shall call upon the defendant for payment thereof, or to show him sufficient goods, chattels, effects and lands, whereof the same may be satisfied; and if the officer fail to find property sufficient to make the same he shall notify all persons who may be indebted to said defendant not to pay said defendant, but to appear before the court, out of which said execution issued * * *.

■ However, the record does not support a conclusion that the title company was indebted to the Campbells within the meaning of Section 39-4-3 or that the sheriff to whom the writ was entrusted for execution completed the steps that result in the Bernalillo County district court acquiring jurisdiction. Under our cases, the debt must be absolutely and unconditionally owing and payable at the time of the summons, and the obligation must not be dependent on the existence or performance of contractual conditions. *Garland v. Sperling Bros.*, 6 N.M. 623, 30 P. 925 (1892), *aff'd*, 7 N.M. 121, 32 P. 499 (1893); *see also Jemko, Inc. v. Liaghat*, 106 N.M. 50, 738 P.2d 922 (Ct.App.1987). Further, substantial compliance with the statute authorizing garnishment is essential to jurisdiction over the garnishee. *Garland v. Sperling Bros.* In this case, for example, there is no evidence that the sheriff made

demand on the judgment debtor. For these reasons, the first issue is without merit.

## WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.

The facts are not in dispute, but rather the legal effect of the facts is at issue. Under these circumstances, on appeal the question is whether the claimants in whose favor the trial court ruled were entitled to judgment as a matter of law. *See Koenig v. Perez*, 104 N.M. 664, 726 P.2d 341 (1986).

In effect, all of appellant's arguments are variations on a single theme: it is inequitable not to allow her to reach the fund ahead of appellees because that fund stands in place of the Los Alamos duplex to which *Robison I* ruled she was entitled. We note with great regret that the legal process did not resolve the dispute among the parties expeditiously, and that appellant has yet to recover all of the money awarded her. Nevertheless, the record does not support a conclusion that she has a superior right to the fund.

The March 13, 1978 judgment provided that all notices of lis pendens previously filed were dissolved. There is no evidence that a supersedeas bond was filed or a stay obtained. Appellant claims that because the 1978 judgment was reversed on appeal, the effect of the notice continued until 1984, when the supreme court denied certiorari in *Robison III*. There seems to be a split of authority on the question of whether a notice of lis pendens continues to be effective pending appellate review of a final judgment without regard to the filing of a bond or securing a stay. *See* 54 C.J.S. *Lis Pendens* § 36(e) (1948); *cf. Higgins v. Fuller*, 48 N.M. 215, 148 P.2d 573 (1943) (a self-executing judgment order or decree is not within statute providing for supersedeas bond).

Appellant also contends that because the notice was never cancelled pursuant to NMSA 1978, Section 38-1-15, it continued in effect after the March 13, 1978 judgment. It is undisputed that in March 1985, the notices of lis pendens had not been cancelled by court order pursuant to Sec-

tion 38–1–15. We assume, but need not decide, that the 1977 notice was effective until 1984.[4]

 Under our statute, a notice of lis pendens provides constructive notice to subsequent purchasers and encumbrancers of litigation affecting the title to real property. *Superior Constr., Inc. v. Linnerooth*, 103 N.M. 716, 712 P.2d 1378 (1986). It is a republication of the pleadings filed in the pending judicial proceedings. If judgment is in favor of the one filing the notice, the rights of that party relate back to the date of the notice. *Cf. Bell v. Gaylord*, 6 N.M. 227, 27 P. 494 (1891) (analyzing the effect of lis pendens filed in connection with a writ of attachment).

Appellant ultimately recovered a money judgment, rather than the land, which was affirmed in *Robison II*. Under New Mexico law, a money judgment becomes a lien on the judgment debtor's realty when the transcript of the judgment docket is filed and recorded with the county clerk of the county in which the realty is located. *Ranchers State Bank of Belen v. Vega*, 99 N.M. 42, 653 P.2d 873 (1982). Although separate rights and causes of action arise from a judgment and a judgment lien, the existence of a valid judgment is a prerequisite to the existence of a judgment lien. *Western States Collection Co. v. Shain*, 83 N.M. 203, 490 P.2d 461 (1971). Thus, the transcript of judgment filed in 1978 was not effective to create a lien on the Los Alamos duplex after the judgment was reversed in *Robison I*. *Id.*

 We conclude that appellant is attempting to establish a judgment lien by a method other than the method provided by the legislature. The notice of lis pendens was not effective in itself to create a lien. *Cf. Bell v. Gaylord*. Additionally, under the New Mexico statute, notices of lis pendens do not give special protection where the ultimate recovery, as here, is a money judgment. *See* NMSA 1978, § 38–1–14; *Tate v. Sanders*, 245 Mo. 186, 149 S.W. 485 (1912); *cf. In re Lafayette Houses, City of New York*, 220 N.Y.S.2d 109 (1961). While

the object of an attachment is to create a prior lien on the property of the attachment debtor as security on any judgment that may be obtained thereafter on the demands covered by the attachment, *see Staab v. Hersch*, 3 N.M. (Gild., E.W.S. ed.) 209, 3 P. 248 (1884), we need not decide whether appellant had statutory grounds for attachment, *see* NMSA 1978, Sections 42–9–1 and –39. The record does not support a conclusion that the statutory procedures were invoked. *See* NMSA 1978, § 42–9–4; *see Southern California Fruit Exch. v. Stamm*, 9 N.M. 361, 54 P. 345 (1898).

Appellant also argues that she is a third-party beneficiary of the written contract between the title company and the Campbells. *But see McKinney v. Davis*, 84 N.M. 352, 503 P.2d 332 (1972). The correspondence between the title company and the Campbells on which Katz relies and other documents in the file support a conclusion that the fund was created to satisfy the lien Katz obtained in 1978. Because that judgment was reversed, we construe appellant's argument on appeal as a claim that the arrangement between the title company and the Campbells should be viewed as giving rise to an equitable lien in her favor based on an implied-in-fact agreement. *See* 53 C.J.S. *Liens* § 4(b)(1) (1948). Under our cases, however, the particular funds must have been appropriated by the debtor to the satisfaction of the debt or the agreement must clearly disclose the intent to create a lien on that fund. *See Reserve Plan, Inc. v. Peters*, 71 N.M. 25, 375 P.2d 576 (1962). In our view, the requisite intent is not present. *See id.*

 We recognize that there are two kinds of equitable liens. *See* D. Dobbs, *Handbook on the Law of Remedies* § 4.3 at 249–50 (1973). One kind is based on agreement, while the other is a remedial device, used to enforce a right to restitution in order to prevent unjust enrichment. *Id.; see also* G. Palmer, I *The Law of Restitution* § 1.5 at 20–21 (1978); 53 C.J.S. *Liens* § 4(a) (1948). Our existing case law

---

4. It was not clear whether appellant relies on the 1978 notices. Because we assume the 1977

notice was effective as a notice until 1984, we need not analyze the effect of those notices.

concerns the former. *See Reserve Plan, Inc. v. Peters.* Because appellant basically contends the result below was inequitable, we have considered the question of whether there are particular facts and circumstances present that justify recognition of the second kind of equitable lien.[5]

The particular facts and circumstances argued to the trial court and asserted on appeal include the sale and the assignment. Because the writ of prohibition obtained by the Campbells voided the Bernalillo County district court order denying their right to sell, we are not willing to characterize the sale as wrongful. The Campbells subsequently asked the trial court to allow the fund to be paid into the court registry, but their request was denied. For these reasons, and because our case law recognizes an attorney's right to a lien against a sum awarded as a setoff, *see Forrest Currell Lumber Co. v. Thomas,* 82 N.M. 789, 487 P.2d 491 (1971), we also are not willing to characterize the assignment as wrongful. There being no other argument for equitable relief, *see* 53 C.J.S. *Liens* § 4(c) (1948), we conclude that appellant has not established a right to the second kind of equitable lien. *See generally Restatement of the Law of Restitution* § 202 (1937).

Appellant also has argued that the Sutin, Thayer & Browne lien attached to her judgment first, and therefore there was nothing for the Campbells to assign to the Threet law firm. This argument depends on a determination that appellant has an interest in the fund. Under our analysis, she does not. Thus, we do not need to decide whether a charging lien against a judgment has priority over a charging lien against a setoff on that judgment. *See Robison I.*

**CONCLUSION.**

For the foregoing reasons, the trial court judgment should be affirmed. Although oral argument was requested, it is the opinion of the panel that oral argument is not necessary. Therefore, appellees' motion for oral argument is denied. *See Garcia v. Genuine Parts Co.,* 90 N.M. 124, 560 P.2d 545 (Ct.App.1977). No costs are awarded.

IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.

---

**5.** There is no evidence before the trial court of the fund's present value. However, counsel for Sutin, Thayer & Browne stated at the hearing that it contained over $60,000. There was no dispute.